[No. 7764–3–I.   Division One.   March 9, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES
C. CHATHAM, *Appellant.*

*G. William Shaw,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Bruce Hilyer, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

Charles C. Chatham, a juvenile at the time of the events herein, appeals his juvenile court conviction of simple assault. RCW 9A.36.040.

The charge arose from an altercation between a group of juveniles (including Chatham) and several adult golfers at the Fairwood Golf Club near Kent, Washington. During the altercation, one of the golfers sustained a serious and permanent eye injury caused, as the juvenile court later determined, by blows struck by the juvenile Chatham. At least one of the juveniles involved in the melee was armed with a club.

■ This appeal involves the juvenile's right to "diversion", as that term is used in this State's Juvenile Justice Act of 1977, RCW 13.40.[1] That act established a comprehensive system for the disposition of complaints lodged against juveniles. One such disposition is a juvenile diversion program in which eligible juvenile offenders perform community service as an alternative to prosecution. RCW 13.40.080. The diversion unit is a community–based correctional unit where local citizens enter into contracts (diversion agreements) with eligible juveniles to pay restitution

---

[1] It should be noted that many procedural aspects of juvenile cases are governed by Juvenile Court Rules (JuCR) promulgated by the State Supreme Court, and in King County, by Local Juvenile Court Rules (LJuCR).

and perform community service in lieu of prosecution. *See* Comment, *Diversion Agreements Under Washington's Juvenile Justice Act of 1977,* 14 Gonz. L. Rev. 423 (1978–79).

In diverting this juvenile's case, a member of the prosecuting attorney's staff phoned the chairperson of the local diversion unit, the Kent Conference Committee, and related the facts of the case as they appeared from the police reports. The chairperson thereupon declined to accept diversion of the juvenile's case because the serious nature of this case did not fall within the committee's eligibility standards for diversion.

The case then went before the juvenile court for an adjudicatory hearing and the defendant was found guilty of assault as charged. One ultimate issue is presented by this appeal.

### Issue

Was reversible error committed in the manner in which the juvenile's diversion was handled and rejected?

### Decision

Conclusion. Although the juvenile did have a right to have his case referred to a diversionary unit, that unit also had the right to refuse to enter into a diversionary agreement with him. The procedures employed herein did not, under the circumstances presented, violate the juvenile's due process or other legal rights.

A juvenile's eligibility for diversion is determined by statute. RCW 13.40.070–.080. *See* JuCR 6.1.

Since the juvenile in this case was a first offender not charged with a felony, he had a right to have his case referred to a diversionary unit, RCW 13.40.070(5); and the prosecuting attorney's office, in turn, had the duty to so refer it, RCW 13.40.070(6).

The juvenile contends that the procedures used resulted in his being denied his right to be handled by a diversion unit, did not comply with the provisions of the juvenile

code and denied him due process of law by forcing him to proceed with an adjudicatory hearing which he was entitled to avoid. RCW 13.40.080(6). We do not agree.

The juvenile's statutory right to have his or her case referred to a diversion unit does not guarantee that the unit will enter into a diversion agreement with the juvenile. Diversion is not always an appropriate disposition, even in first offender juvenile cases.

As one of the sponsors of the legislation which resulted in the new juvenile code has written concerning the purpose of diversion:

> Diversion represents the intent to preserve a species of informal adjustment for those youngsters whose offenses have been so few and so minor that involvement with a court would be counterproductive. The intent is to foster community accountability boards, a means for straightening out youthful offenders that has proved both popular and effective in the past.

(Footnote omitted.) Becker, *Washington State's New Juvenile Code: An Introduction,* 14 Gonz. L. Rev. 289, 308 (1978–79).

The juvenile code grants a diversion unit the authority to exercise sound discretion and to reject a case referred to it for diversion:

> A diversionary unit may refuse to enter into a diversion agreement with a juvenile. It shall immediately refer such juvenile to the court for action and shall forward to the court the criminal complaint and a detailed statement of its reasons for refusing to enter into a diversion agreement.

RCW 13.40.080(10) (part). By providing that the reasons for refusing to enter a diversion agreement be in writing, the statute assures fair and reasoned decisions for rejecting diversion and insures juvenile court control over the fairness of the procedure. The informal phone conversation by which this juvenile was referred and rejected prompted the juvenile court to conduct a special hearing into the reasons for rejecting this juvenile's diversion referral.

The chairperson of the Kent Conference Committee testified at that hearing that in order to accommodate 300 to 350 diversions a year, that committee delegates to her the task of conducting a prescreening of diversion referrals to see that each one meets the committee's minimum standards of acceptance. These minimum standards excluded those cases involving serious injury or weapons from further consideration for diversion.

This prescreening by the chairperson of the diversionary unit is done, according to her uncontroverted testimony, prior to the juvenile being notified and appearing and prior to the invocation of the detailed diversionary procedures provided by the juvenile code. *See* RCW 13.40.080; JuCR 6.1–6.6.

Of some 300 cases handled, the chairperson testified that this was the only case she could recall in which the prescreening procedure was not carried out in writing. Thus the usual prescreening by the diversion unit is handled in accordance with the course outlined by statute, RCW 13.40.080(10), set out above.

Satisfied that the committee standards used in refusing this juvenile's diversion provided a reasonable and fair basis for rejecting the diversion referral, the juvenile court determined any errors in the procedural handling of the matter were merely formalistic and not prejudicial.

Although the informal procedures followed in this case are not exemplary, the juvenile's case was referred to a diversionary unit, was considered by that unit through its authorized representative and was rejected for reasons that were neither arbitrary nor capricious. The juvenile court was satisfied that this juvenile's diversion was unacceptable to the diversion unit and that, therefore, no purpose would be served by sending the case back to perform some ritualistic paper work. We agree.

The prescreening procedure of the diversionary unit in this case is not prohibited by statute, and is contemplated by RCW 13.40.080(10), set out above. Because the rejection of this juvenile's referral was based on standardized safe-

guards properly adopted and reasonably applied to determine candidates with whom the committee would be likely to enter diversion agreements, it is not violative of due process. On these facts, exercise of some degree of informality in these preliminary proceedings did not deprive the defendant of a fair and reasoned decision or deny him his right to due process. *See In re Noble,* 15 Wn. App. 51, 57, 547 P.2d 880 (1976).

Affirmed.

SWANSON and WILLIAMS, JJ., concur.

Reconsideration denied May 27, 1981.

Review denied by Supreme Court September 25, 1981.