[No. 13710–7–I.  Division One.  June 3, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. WS, *Appellant.*

*Dori Jones* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *James W. Leslie, Deputy,* for respondent.

GROSSE, J.—WS appeals her conviction in juvenile court for offering and agreeing to an act of prostitution. She alleges that the trial court erred in denying her motion to remand the case to diversion. We agree and reverse.

By information filed May 11, 1983, 13 year old WS was

accused of offering and agreeing to engage in sexual conduct for a fee, a misdemeanor. Her prior criminal history consisted of two third degree theft convictions, both gross misdemeanors. Pursuant to statute,[1] the prosecutor had an obligation to refer her case for diversion rather than filing it in court.

On May 7, 1983, the prosecutor referred her case to the diversion unit with a rejection form attached. This was in accordance with the prosecutor's policy that all juvenile prostitution cases were inappropriate for diversion, and that any remittal to a diversionary unit should include a rejection form. Upon receipt of the referral, the diversion unit rejected WS's referral and stated the reason for rejection by writing "prostitute" on the form.

A hearing was held on WS's motion for remand. During the hearing, the prosecution submitted an affidavit of Dick Carlson, the then Acting Court Services Manager for King County Juvenile Court. The affidavit set forth the policy of the diversionary unit to reject all prostitution cases as well as the reasons therefor. Those reasons included the mobility of prostitutes, the repeated failure of those juveniles to appear for court, and the inadequacy of options under diversion to deter or impact further offensive behavior. Carlson's affidavit further stated that there was a need for ongoing supervision of such offenders which could best be provided by the courts by means of "stay out of areas of prostitution" orders. The trial court denied the motion to remand.

At trial, WS stipulated to the facts contained in the police report. She was found guilty of offering and agreeing

---

[1] RCW 13.40.070(6), formerly 13.40.070(5), provides:

"Where a case is legally sufficient the prosecutor shall divert the case if the alleged offense is a misdemeanor or gross misdemeanor or violation and the alleged offense(s) in combination with the alleged offender's criminal history do not exceed three offenses or violations and do not include any felonies: *Provided,* That if the alleged offender is charged with a related offense that must or may be filed under subsections (5) and (7) of this section, a case under this subsection may also be filed."

to an act of prostitution and was sentenced to 6 months of probation and counseling as directed by the probation officer. In addition, she was ordered to stay out of areas of prostitution and to attend school.

The question presented to this court is whether the rejection by the diversionary unit of referral of all prostitutes is arbitrary and capricious. We find that it is.

██ ██ The categorical denial of all prostitutes is a usurpation of legislative authority and contrary to the intent of the Legislature in enacting the Juvenile Justice Act of 1977 (hereinafter Juvenile Justice Act).

Statutes must be interpreted in accordance with the intent of the Legislature. *Purse Seine Vessel Owners Ass'n v. Moos*, 88 Wn.2d 799, 567 P.2d 205 (1977). RCW 13.40-.010(2)(g) sets forth the stated intent and purpose of the Legislature to

> Provide for the handling of juvenile offenders by communities whenever consistent with *public safety*;

(Italics ours.) Indeed, the Juvenile Justice Act contemplates certain classes of crimes for which there need not even be a diversionary agreement. RCW 13.40.080(11) provides in pertinent part:

> A diversionary unit may, in instances where it determines that the act or omission of an act for which a juvenile has been referred to it involved no victim, or where it determines that the juvenile referred to it has no prior criminal history and is alleged to have committed an illegal act involving *no threat of or instance of actual physical harm* and involving not more than fifty dollars in property loss or damage and that there is no loss outstanding to the person or firm suffering such damage or loss, counsel and release or release such a juvenile without entering into a diversion agreement . . .

(Italics ours.)

Prostitution, as charged in this case, is an illegal act that involves "no threat of or instance of actual physical harm". Thus, the crime with which WS was charged was viewed by the Legislature as such a minor offense that it could be dismissed without even the necessity for a diversionary agree-

ment.

Respondent argues that a diversionary unit has the authority to prescreen applicants and to set forth minimum standards for acceptance. Respondent relies on *State v. Chatham,* 28 Wn. App. 580, 624 P.2d 1180 (1981) as upholding its position. In *Chatham,* the juvenile was convicted of an assault which had resulted in a serious permanent eye injury to the victim. A telephone conversation between the prosecutor and the chairperson of the diversionary unit resulted in the juvenile being denied access to the diversionary unit. A special hearing established that the diversionary unit had a policy not to take cases involving serious injury. These minimum standards set by the unit were found to be well reasoned and the court held that nothing precluded a diversionary unit from setting such standards. *Chatham* is distinguishable from the present case.

In *Chatham,* the diversionary unit's rejection was based upon certain behavior which can be present in different criminal acts. In the instant case, the diversionary unit is precluding from diversion an entire class of offenders regardless of the individual characteristics of the offender or his behavior. Such an exclusion is arbitrary. Our courts have defined arbitrary and capricious conduct as "willful and unreasoning action, without consideration and in disregard of facts or circumstances." *DuPont–Fort Lewis Sch. Dist. 7 v. Bruno,* 79 Wn.2d 736, 739, 489 P.2d 171 (1971). The action taken by the diversionary unit disregards the particular circumstances of WS's case and denies her access to the unit without considering the particular facts of her case.

This is not to say that all prostitutes must be accepted by a diversionary unit or even that WS must necessarily be accepted by the diversionary unit but, rather, that a denial based on the crime itself is arbitrary when it is clear that the Legislature intended such crimes as appropriate for diversion. It is clear from a reading of the Juvenile Justice Act that the purpose and intent of the Legislature is to

handle juvenile offenders within the community whenever consistent with public safety. RCW 13.40.010(2)(g).[2]

WS also raises the issue that the diversionary unit failed to enumerate a detailed statement of the reasons for her rejection as required by RCW 13.40.080(10). While not determinative, it should be noted that this omission necessitated a separate hearing by the juvenile court to ascertain whether or not the rejection was arbitrary. Compliance with the detailed statements required by the statute would obviate the need for these additional hearings and better serve the interests of justice.

We reverse the conviction and remand to the trial court for referral to the diversionary unit.

SCHOLFIELD, A.C.J., and WILLIAMS, J., concur.

---

[2]*Cf. State v. Norton*, 25 Wn. App. 377, 380, 606 P.2d 714 (1980), wherein the court stated:

"The essence of the compromise of misdemeanors statute is restitution to crime victims and *avoidance of prosecution for minor offenders. These functions are consistent with the purposes of the Juvenile Justice Act of 1977, specifically RCW 13.40.010(2)(g) and (h)*." (Italics ours.)