[Nos. 12839–6–I; 14395–6–I.   Division One.   September 16, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM RHEA RALPH, *Appellant.*

*In the Matter of the Personal Restraint of* WILLIAM RHEA RALPH, *Petitioner.*

*Wolfe & Cullen* and *James E. Lobsenz,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *David H. Smith, Deputy,* for respondent.

SWANSON, J.—William Rhea Ralph appeals from a judgment and sentence entered after his conviction of first degree statutory rape. Ralph also filed a personal restraint petition which has been consolidated with this appeal. Ralph's assignments of error address three general procedural areas—(1) pretrial motions, (2) sentencing, and (3)

revocation of deferred sentence—and raise due process and Sixth Amendment issues. We find no error, however, and affirm the judgment and sentence.

The State charged Ralph with first degree statutory rape. Prior to trial, Ralph moved the court to order the King County Prosecutor's office to adopt standards for implementation of, and apply to Ralph, the felony deferred prosecution statute, former RCW 9.95A.[1] Ralph also moved the court to order a deferred prosecution. The court ruled that, although the felony deferred prosecution statute did not compel the King County Prosecutor's office to establish or implement a deferred prosecution program, it did allow the court to order deferred prosecution on defense motion. However, based on the conflicting testimony before it, the court expressed great doubts that Ralph would be a good candidate for rehabilitation in the community and, therefore, denied the motion for deferred prosecution.

Ralph then waived his right to a jury trial, stipulated to admission of the police reports, and pleaded not guilty, despite his having confessed to the crime during the hearing on the pretrial motion. The court then found Ralph guilty.

At sentencing, the prosecutor recommended that (1) Ralph be sent to Western State Hospital on a deferred sentence provided Ralph is deemed to be a sexual psycho-

---

[1]RCW 9.95A.030(4) provides in part:

"'Deferred prosecution' means a special supervision program, for an individual, ordered for a specified period of time by the court prior to a guilty plea to, or a trial on, a felony charge, pursuant to either:

"(a) A written agreement of the prosecuting attorney, defendant, and defense counsel, with concurrence by the court; or

"(b) A motion by the prosecuting attorney *or defendant*, the court being satisfied based upon all appropriate evidence, that a deferred prosecution program for the indicated individual is *in the best interests of society and of the individual.*

"A deferred prosecution program shall provide that at the end of the court ordered specified time, if the defendant has satisfied all the conditions of the program, *the charge shall be dismissed*; but if the defendant does not meet any of the conditions of the program at any time prior to completion of the specified period, the court may enter an order rescinding the deferred prosecution program and authorizing the prosecution to proceed." (Italics ours.)

path amenable to treatment (no sexual psychopathy petition was filed), but (2) if Ralph did not meet these conditions, he be sent to prison to serve a maximum sentence of 20 years. Defense counsel agreed that he wanted Ralph sent to Western State Hospital rather than to prison. The court then deferred Ralph's 20–year sentence on the following relevant conditions:

4) The defendant shall make prompt application for treatment in Western State Hospital Sexual Psychopathy Program pursuant to RCW 71.05.050;

5) If the defendant is found to be a sexual psychopath, the defendant shall enter in, fully participate and successfully complete the Sexual Psychopathy Program at Western State Hospital;

6) The defendant shall not exercise his right under RCW 71.05.050 to immediate release from the program;

7) The defendant shall make staisfactory [*sic*] progress in his treatment as determined by the hospital or directors of the treatment program; . . .

Ralph was then taken to jail where he awaited evaluation by personnel from Western State Hospital.

On the morning of January 20, 1984, 1 year after sentencing, Ralph, who was still being detained in the county jail, moved the court to grant him a furlough to attend his brother's funeral in California. The court also had before it a motion for revocation of Ralph's deferred sentence. This latter motion, however, was continued for 1 week. Initially, the court ruled that it would sign and enter an order to allow Ralph the furlough provided the prosecutor and defendant could reach an agreement on conditions which would ensure Ralph's return.

Later that afternoon, before any agreement between the prosecutor and defendant had been reached, the court called a special hearing and revealed to defense counsel (without Ralph being present) that following the hearing on the furlough motion the prosecutor had initiated an ex parte communication with the court:

THE COURT: The reason I called you is not directly regarding this order but because this morning, after the

hearing, Mr. Smith came to see the Court ex parte, with another member of his office, and stated that it was an emergency, and asked the Court to hear a motion for reconsideration, without a reporter present. There was no reporter present at that time. And Mr. Smith indicated that there were some problems or potential problems that his office was investigating with regard to the veracity of your client in presentations to the Court and matters which might affect the Court's decision *in this matter of releasing him.* The Court was uncomfortable hearing that matter ex parte, and I advised Mr. Smith that you should be contacted.

(Italics ours.)

The prosecutor disclosed to defense counsel:

The nature of my concerns to the Court were that we were concerned, first, with the authenticity of the reports the Court has recently received [as to the death of Ralph's brother]. That was the first one.

The second one, if I'm not mistaken, was the defendant's connection to the SMART program [a sexual deviancy treatment program]. And those were, I believe, the two areas.

The prosecutor maintained, however, that he could not explain to defense counsel all of the things discussed ex parte without jeopardizing ongoing investigations. He said,

the investigation does not center on the defendant in this case. The defendant in this case has been mentioned, but the investigation goes far beyond the defendant. And those are the persons that I am most concerned about. And at this point it's my belief that disclosure of information would make the investigation at this point futile.

Later, in response to the court's inquiry as to whether the prosecutor anticipated that further charges would be brought against Ralph, the prosecutor stated: "I can't say who would be charged, and with what. At this point it's still too early to note."

The court then sua sponte reversed its earlier position regarding the granting of the furlough specifically because of extradition problems which it had discussed with another judge after the initial granting of the furlough, but

which had not been discussed in the ex parte communication.

During this hearing, the prosecutor asked that the transcript of the hearing be sealed, and it was so ordered. Also, he asked defense counsel not to discuss the nature of the ex parte communications with Ralph, who was not present. Defense counsel replied:

I have some difficulty with that altogether. First of all, if this were a condition of my client's release for this furlough, I would at least consider it. It would still cause me a little scratching of the head in wondering where I am here. But if I am being asked to withhold information from my client, which may or may not be useful in his instructions to me and in his further defense on some other charge, if I may have to have information from him now that might be necessary in that defense, assuming that other charges are going to be brought, I can't at all responsibly and honestly say that I can't talk about this with him.

One week later, and as Ralph contends, prior to his having learned about the ex parte communication, the court heard argument on the motion to revoke Ralph's deferred sentence status. Ralph admitted that he refused to submit to an evaluation by Western State Hospital personnel on two occasions after having waited in jail for over 9 months. He based these refusals on his having learned that other hospitals allegedly had a better success rate in their treatment of sexual deviants than did Western State Hospital. He asked the court to consider the varying success rates of various hospitals and to allow him to be sent to one of them in lieu of Western State Hospital. He also asked the court to consider, as meeting the conditions of his deferred sentence, post–conviction psychiatric evaluations and treatment he had received from persons not associated with Western State Hospital. The court refused to consider these other programs because Ralph had willfully failed to follow the court's prior order to submit to an evaluation by Western State Hospital personnel. This it deemed to be an attempted manipulation of the court. Thus, the court

revoked Ralph's deferred sentence status and sentenced him to prison with credit for time served in jail.

I
PRETRIAL MOTIONS

A. CrR 3.5 Hearing. Because Ralph's counsel waived the CrR 3.5 hearing, he may not now assail any failure of the court to conduct one.

B. Deferred Prosecution. Ralph cites to us no authority, other than the statute itself and *State v. WS,* 40 Wn. App. 835, 700 P.2d 1192 (1985), for his contention that the felony deferred prosecution statute compels the State or individual counties to develop a deferred prosecution program. *State v. WS, supra,* is inapposite because it involved a misdemeanor for which legislation specifically provided that the prosecutor consider diversion. Thus, we are left only with our reading of the statute which does not support Ralph's contention. Rather, the statute only constitutes a grant of authority to the trial court to order "deferred prosecution" under certain circumstances. Only after the court entered such an order would the county be obliged to provide such a program.

Deferred prosecution would have been available to Ralph, who did *not* enter into a deferred prosecution agreement with the prosecutor, only if the court had found that it was "in the best interests of society and of the individual." RCW 9.95A.030(4). The court found that there was a significant risk that Ralph would reoffend and, thus, it was not "in the best interests of society" that he be given a deferred prosecution. Also, the court found that Ralph was not amenable to treatment in the community in an outpatient treatment program and, thus, it was not "in the best interests . . . of the individual" that he be given a deferred prosecution. Because these findings were based on conflicting evidence and because the court reached its decision specifically without being influenced by the lack of a deferred prosecution system in King County, we uphold the

court's ruling that Ralph was not entitled to a deferred prosecution.

## II

### SENTENCING

A. <u>Authority To Order Sexual Psychopathy Evaluation.</u> The primary issue we must next resolve is whether the trial court exceeded its authority or abused its discretion by ordering, as a condition of deferred sentence, that Ralph enter and successfully complete the sexual psychopathy program at Western State Hospital.

■ Once the defendant is found guilty, the trial court has authority to condition deferral of the defendant's sentence "upon defendant's application and admission to the sexual psychopath program at Western State Hospital." *State v. Osborn,* 87 Wn.2d 161, 165, 550 P.2d 513 (1976).

> Requiring the defendant to apply and be admitted for psychiatric treatment is a common condition on probation, and is generally considered reasonable when the question has come up for judicial review.

*Osborn,* at 166. Furthermore, the conditions of Ralph's deferred sentence fulfill the requirements that

> (1) the defendant not exercise his right under the statute to immediate release from this program (RCW 71.05.050) without the court's permission, (2) he make satisfactory progress in his treatment as determined by the hospital and directors of the treatment program, and (3) he display good behavior for the remainder of his probation.

*Osborn,* at 166. Accordingly, the court did not exceed its authority nor abuse its discretion.

■ B. <u>Countertherapeutic Treatment.</u> Ralph's claim that treatment at Western State Hospital would be countertherapeutic or counterrehabilitative and that submitting him to treatment there would be an abuse of judicial discretion is not well taken. This issue was not timely presented to, nor considered by, the trial court. Thus, it was not preserved for appeal. Even if it had been, we find the conditions imposed on the deferred sentence do not amount to an abuse of the court's discretion.

C. <u>Timely Evaluation.</u> Ralph next argues that he was not

afforded a timely sexual psychopathy evaluation and that this violated his right to speedy sentencing. Assuming Ralph has a right to speedy sentencing, he was sentenced well within any limitations of such a right, having been sentenced shortly after conviction. The fact that imposition of his sentence was deferred does not violate any claimed right to speedy sentencing, particularly in light of the fact that the court deferred Ralph's sentence upon *his* request. Also, Ralph refused to allow Western State Hospital personnel to conduct their evaluation. Thus, any delay was due in substantial part to his actions.

D. Credit for Time Served. Ralph's next contention, that he was not given full credit for time served in jail, is not well taken. The judgment and sentence specifically stated he was to be credited with "1 year and 2 weeks already served". There was no error.

### III
### REVOCATION OF DEFERRED SENTENCE STATUS

■ A. Revocation Generally. Probation is not a matter of right; it is a matter of privilege. *State v. Blight,* 89 Wn.2d 38, 569 P.2d 1129 (1977). Therefore, revocation of one's probation is a matter resting within the discretion of the trial court and probation will not be reinstated on appeal absent an abuse of discretion, *State v. Joy,* 34 Wn. App. 369, 370, 661 P.2d 994 (1983), "that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Here, the court revoked Ralph's probation because he twice refused to submit to an evaluation by Western State Hospital personnel. Absent such an evaluation, he could not be accepted into the sexual psychopathy program at Western State Hospital, a condition of probation. Having willfully violated this condition, the court properly revoked Ralph's probation. *See State v. Joy, supra* (court properly revoked probation where defendant failed to enter and successfully complete alcohol treatment program); *State v.*

*Bennett,* 35 Wn. App. 298, 666 P.2d 390 (court properly revoked probation where defendant, a sexual psychopath, was found to be not amenable to treatment, a condition of probation), *review denied,* 100 Wn.2d 1025 (1983).

The fact that Ralph sought and received evaluations and treatment by others not associated with the Western State Hospital program after his conviction did not fulfill the conditions of probation, as these evaluations would shed no light on Ralph's amenability to treatment *at* Western State Hospital. Further, as the trial court found, Ralph's statements at the probation revocation hearing indicate that "he has made up his mind that he cannot stay within the program [at Western State Hospital], that he cannot cooperate in the program." There was no error.

■ B. Ex Parte Communication. We turn now to the issues arising from the ex parte communication. As the court noted for the record, the ex parte communication had nothing to do with the issue of revocation of Ralph's deferred sentence; it concerned only the furlough issue. Furthermore, as we have already stated, the trial court properly revoked Ralph's probation for admitted violations of the conditions of probation. Thus, any other information the court may have been exposed to through the ex parte communication with the prosecutor would have had no effect upon its revocation of Ralph's probation. Additionally, Ralph's counsel knew of the ex parte communication 1 week prior to the probation revocation hearing, *cf. In re Boone,* 103 Wn.2d 224, 691 P.2d 964 (1984) (ex parte communication amounted to reversible error where neither defendant nor defense counsel knew of a secret report filed by the probation officer with the court), and thus, Ralph had an adequate opportunity to rebut the false accusations which the prosecutor allegedly made during the ex parte communication.

Although Ralph requests a reference hearing to determine the facts surrounding the ex parte contact, the information to be obtained in such a proceeding would most likely not differ materially from the disclosures made by

the court and prosecutor on the afternoon of January 20, 1984. Even if a discrepancy would be revealed in such a hearing, a remand for reconsideration of the revocation of Ralph's probation would produce no new result, as Ralph has already admitted a willful violation of the material conditions of probation.

## IV
### Due Process and Sixth Amendment Right to Counsel

Ralph challenges certain alleged acts of the prosecutor as having violated his due process and Sixth Amendment rights. These alleged activities include: (1) receiving, and failing to reveal receipt of, a stolen copy of a rough draft of a psychological evaluation of Ralph; (2) asking defense counsel not to discuss with Ralph the existence and nature of the prosecutor's ex parte communication with the trial judge and the prosecutor's denial of such ex parte communication; (3) failing to disclose before trial the results of medical and psychological evaluations of the victim; (4) allowing a prosecution witness to read Ralph's confession before testifying, thereby "tainting" her testimony and the court's decision not to grant a deferred prosecution; (5) making "inflammatory and inaccurate" statements during telephone conversations with the victim's mother; and (6) making false and misleading statements to the trial court, board of prison terms, and this court. First, Ralph has failed to indicate how these alleged activities would or could have prejudiced him. Second, considering the fact that Ralph admitted having committed the crime charged, that the court granted his request for deferred imposition of the sentence, that Ralph admitted willfully violating the material conditions of his probation, that Ralph's counsel knew of the ex parte communication and refused to conceal this from Ralph, that the record discloses no request by Ralph for discovery of the results of the victim's medical and psychological evaluations, that revocation of Ralph's deferred sentence status was not based on any information

revealed in the ex parte communication, and that the trial court had indicated at the hearing on Ralph's motion for furlough that Ralph's failure to submit to the ordered evaluations constituted a breach of the conditions of his deferred sentence, we perceive no undue prejudice resulting from these alleged activities. Therefore, despite our distress at the prosecutor's initiating the ex parte meeting, we find no violation of Ralph's due process rights nor his Sixth Amendment right to counsel.

The judgment is affirmed and the personal restraint petition is denied.

RINGOLD and GROSSE, JJ., concur.

Review denied by Supreme Court November 22, 1985.