[No. 51323-1-I. Division One. September 8, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JESSE R. SMITH, *Appellant*.

---

[39] *Wingert*, 146 Wn.2d at 848.

*Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*Thomas E. Seguine, Prosecuting Attorney*, and *Erik Pedersen, Deputy*, for respondent.

KENNEDY, J.— After Jesse R. Smith's participation in drug court was terminated and his deferred prosecution revoked, he was convicted of delivery of cocaine. The trial court declined to grant Smith a Drug Offender Sentencing Alternative (DOSA) sentence, stating, "I am not of a mind to give DOSAs [to people who do not make it through drug court]." Smith characterizes this statement as a refusal by the trial court to exercise its discretion, which in and of itself constitutes an abuse of discretion. We characterize it as a tenable basis for the court's exercise of discretion not to grant a DOSA. But because the trial court incorporated Smith's washed-out juvenile convictions in calculating his offender score, we vacate the sentence and remand for imposition of a standard range sentence based on a corrected offender score.

## FACTS

On August 23, 2000, Jesse Smith was arrested for delivery of cocaine. On February 2, 2001, he was charged with delivery of cocaine, a controlled substance. Based on a deferred prosecution, Smith participated in drug court from May 11, 2001 to April 19, 2002 when his deferred prosecution was revoked and he was terminated from drug court based on four positive urinalysis tests and his failure on three occasions to submit to other urinalysis tests. The court convicted Smith as charged following a bench trial on stipulated facts on April 19, 2002.

At sentencing, Smith asked the trial court to consider granting him a DOSA sentence. The court denied the request, stating:

> THE COURT: I am not of a mind to give DOSAs. If somebody doesn't make it through [drug court], I'm basically saying that they're not amenable to treatment, and—
>
> DEFENDANT: Okay.

Report of Proceedings (Apr. 19, 2002) at 10. The court calculated Smith's offender score using his three juvenile adjudications for burglary in 1996 when Smith was 14 years old, and imposed a standard range sentence based on that score.

Smith filed a postsentencing motion, alleging that he should have been found eligible for a DOSA and that his offender score was incorrectly calculated. Smith's motion was denied. He now appeals.

## ANALYSIS

### 1. Consideration of a DOSA Sentence

> An offender is eligible for the special drug offender sentencing alternative if:
>
> (a) The offender is convicted of a felony that is not a violent offense or sex offense . . . ;

(b) The offender has no current or prior convictions for a sex offense or violent offense . . . ;

(c) For a violation of the Uniform Controlled Substances Act under chapter 69.50 RCW . . . , the offense involved only a small quantity of the particular controlled substance as determined by the judge upon consideration of such factors as the weight, purity, packaging, sale price, and street value of the controlled substance; and

(d) The offender has not been found . . . to be subject to a deportation detainer or order and does not become subject to a deportation order during the period of the sentence.

RCW 9.94A.660(1). It is undisputed that Smith met the four criteria listed in the statute. If the sentencing judge determines that the offender is eligible for a DOSA, and that "the offender and the community will benefit" from its use, "the judge may waive imposition of a sentence within the standard sentence range and impose a sentence that must include a period of total confinement in a state facility for one-half of the midpoint of the standard sentence range." RCW 9.94A.660(2). Thus, if Smith had been given a DOSA, he would have been eligible for release into a community-based treatment program after serving one-half of the midpoint of his standard range sentence.

 Generally, a standard range sentence, of which a DOSA is an alternate form, may not be appealed. *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003); RAP 2.2(b)(6); RCW 9.94A.585(1). This prohibition does not, however, bar a party from challenging legal errors or abuses of discretion in the determination of what sentence applies. *Williams*, 149 Wn.2d at 147. For example, if a court refuses to exercise its discretion at all, the sentence may be appealed. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

██ Smith argues that the trial court abused its discretion by refusing to consider a DOSA at all, for Smith or anyone else who fails to successfully complete drug court. We disagree. Failure of a candidate to successfully complete drug court, which is one form of a community-based treat-

ment alternative, is a tenable basis for the exercise of the court's discretion to decline to grant a DOSA, which includes another form of community-based treatment. Smith had been given more than one opportunity to succeed at drug court. He was terminated from the program only after he received four positive urinalysis tests and refused to take three more such tests. We live in an age of scarce public resources, and although drug addicts often fail to rehabilitate themselves at the first opportunity, only to succeed at some later time—perhaps after a period of incarceration or some other life-altering event—courts are not required to consider granting community-based treatment alternatives indefinitely.

We see a distinction between refusal to exercise judicial discretion at all, and the exercise of judicial discretion based on reasonable factors that the court considers ahead of time—such as the failure of a candidate to successfully complete drug court as it relates to whether that candidate and the community likely will benefit from a DOSA.

By way of analogy, in *State v. Chatham*, 28 Wn. App. 580, 624 P.2d 1180 (1981), this court approved the prescreening program of a juvenile court diversionary unit by which the unit routinely rejected juveniles from participation in the diversion program who had committed crimes involving serious injuries or the use of weapons, even though the juveniles were charged with misdemeanors or gross misdemeanors that were otherwise subject to diversion. Although the prosecutor was obligated by statute to refer eligible juveniles to the diversionary unit, the unit had the right to refuse to enter into a diversionary agreement with them, for valid reasons in given cases. *Id.* at 582-83 (citing RCW 13.40.080(10)). "Because the rejection of this juvenile's referral was based on standardized safeguards properly adopted and reasonably applied to determine candidates with whom the committee would be likely to enter diversion agreements, it is not violative of due process." *Id.* at 584-85.

By the same token, trial courts may properly exercise discretion to reject candidates for DOSAs based on the fact

that they have recently flunked out of drug court during a period of deferred prosecution. This is not a refusal to exercise discretion. It is the exercise of discretion based on a tenable ground, and for a tenable reason. Accordingly, we affirm the court's exercise of discretion in Smith's case.

## 2. Washed-out Juvenile Convictions[1]

Smith's other contention on appeal is that, based on *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999), *State v. Smith*, 144 Wn.2d 665, 30 P.3d 1245, 39 P.3d 294 (2002), and *State v. Dean*, 113 Wn. App. 691, 54 P.3d 243, *review denied*, 149 Wn.2d 1009 (2003), his prior juvenile adjudications for offenses committed before his 15th birthday "washed out" when he turned 15, and were therefore improperly included in his offender score. We agree.

Smith was born on January 19, 1982. He committed three residential burglaries on June 11, 1996, for which he was sentenced on September 24, 1996, while he was 14 years old. He turned 15 on January 19, 1997. As of that date, former RCW 9.94A.030(12)(b)(ii) (1996) provided that juvenile offenses that were committed before the offender's 15th birthday were to be excluded from an adult offender's score. *Smith*, 144 Wn.2d at 670-71.

Effective July 1, 1997, the legislature amended former RCW 9.94A.030(12)(b) to include all prior juvenile convictions in a defendant's criminal history. LAWS OF 1997, ch. 338 § 2 (1997 amendment); *Smith*, 144 Wn.2d at 671. Effective June 8, 2000, the legislature enacted RCW 9.94A.345, in response to our Supreme Court's decision in *Cruz*, 139 Wn.2d at 191-93 (holding that juvenile sex offenses that had washed out under the law in effect before a 1990 amendment to the Sentencing Reform Act of 1981 (chapter 9.94A RCW) could not be included in calculation of Cruz'

---

[1] Smith argues in his opening brief that he challenged his "incorrect offender score" at trial, and thus his appeal of that issue is timely. As the State concedes, we should address this issue regardless of whether it was properly preserved for appeal because established case law allows illegal or erroneous sentences to be challenged for the first time on appeal. *See State v. Ford*, 137 Wn.2d 472, 477-78, 973 P.2d 452 (1999).

adult offender score for his current offense committed in 1994). LAWS OF 2000, ch. 26 § 2. This statute states: "Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed." RCW 9.94A.345. In an accompanying statutory note, the legislature wrote:

> This act [RCW 9.94A.345] is intended to cure any ambiguity that might have led to the Washington supreme court's decision in *State v. Cruz*, Cause No. 67147–8[, 139 Wn.2d 186, 985 P.2d 384] (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current offense was committed. RCW 9.94A.345 is also intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives.

LAWS OF 2000, ch. 26, § 1.

Jesse Smith committed the current offense on August 23, 2000. The 1997 amendment by which juvenile offenses committed before the offender's 15th birthday were to be counted in the adult offender score was in effect when Jesse's current offense was committed, as was the legislature's enactment of RCW 9.94A.345. Accordingly, the State asks us to affirm the trial court's inclusion of Smith's prior juvenile offenses in his offender score.

■ But our Supreme Court has already ruled that the 2000 enactment of RCW 9.94A.345 does not render the 1997 amendment retroactive. *See Smith*, 144 Wn.2d at 672-73. In *Smith*, the Supreme Court also decided *State v. Lowe* and *State v. Hendricks*. Both Lowe and Hendricks had committed crimes before their 15th birthdays, and both had turned 15 before the effective date of the 1997 amendment. Their juvenile adjudications for offenses committed before they were 15 years old washed out under the law that was in effect on their 15th birthdays, and were not revived by the 1997 amendment or by the 2000 enactment of RCW 9.94A.345. *Smith*, 144 Wn.2d at 669, 674-75. *See also Dean*, 113 Wn. App. at 696-97 (construing *Smith* to hold that a

juvenile adjudication for a crime committed before the 1997 amendment and before the juvenile's 15th birthday washes out permanently in accord with the law in effect on the occasion of the 15th birthday).

Effective June 13, 2002, the legislature spoke again, stating that it considered both *Cruz* and *Smith* to be wrongly decided:

> When the legislature enacted the sentencing reform act, chapter 9.94A RCW, and each time the legislature has amended the act, the legislature intended that an offender's criminal history and offender score be determined using the statutory provisions that were in effect on the day the current offense was committed.
>
> Although certain prior convictions previously were not counted in the offender score or included in the criminal history pursuant to former versions of RCW 9.94A.525 or RCW 9.94A.030, those prior convictions need not be "revived" because they were never vacated. As noted in the minority opinions in *Cruz* and *Smith*, such application of the law does not involve retroactive application or violate ex postfacto prohibitions. Additionally, the Washington state supreme court has repeatedly held in the past that the provisions of the sentencing reform act act upon and punish only current conduct; the sentencing reform act does not act upon or alter the punishment for prior convictions. *See In re Personal Restraint of Williams*, 111 Wn.2d 353[, 759 P.2d 436] (1988). The legislature has never intended to create in an offender a vested right with respect to whether a prior conviction is excluded when calculating an offender score or with respect to how a prior conviction is counted in the offender score for a current offense.

Laws of 2002, ch. 107, § 1.

■ Nevertheless, curative amendments cannot be applied retroactively if they contravene a judicial construction of the original statute. *Dean*, 113 Wn. App. at 698 (citing *State v. Jones*, 110 Wn.2d 74, 82, 750 P.2d 620 (1988); *State v. Dunaway*, 109 Wn.2d 207, 216 n.6, 743 P.2d 1237 (1987)). The 2002 legislation contravenes the Supreme Court's construction of the 1997 and 2000 amendments, and thus we cannot apply it retroactively to Smith's current offense,

which he committed in 2000. *See Dean*, 113 Wn. App. at 699.

 Accordingly, Smith's 1996 juvenile adjudications washed out under former RCW 9.94A.0303(12)(b)(ii) because he was 14 years old when he committed them; and he turned 15 before the effective date of the 1997 amendment. The juvenile adjudications remained washed out despite the 1997, 2000, and 2002 amendments, and should not have counted toward his offender score for his current offense. His sentence is vacated and we remand for imposition of a new sentence under the correct offender score.

Affirmed in part, reversed in part, and remanded for resentencing.

ELLINGTON and APPELWICK, JJ., concur.