## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57153-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRITTNEY CAROL GUSTAITIS, | |
| Appellant. | |

CHE, J. — Brittney Gustaitis appeals her convictions for possession of a stolen vehicle and attempting to elude a pursuing police vehicle, arguing the trial court erred by admitting hearsay under the business records exception,[1] declining to give a limiting instruction on the hearsay, and failing to conduct a CrR 3.5 hearing, and that trial counsel was ineffective for failing to request a CrR 3.5 hearing, and that cumulative error deprived her of a fair trial.

In the late evening of February 21, 2021, police were involved in a high-speed chase of two trucks driving in tandem—a white Ford F-250 that had been reported as stolen and a maroon Ford F-350—in Shelton, Washington. Police successfully utilized stop sticks,[2] which brought the white truck to a stop in a ditch. Its driver entered the front passenger side of the maroon truck before the maroon truck escaped. Shortly thereafter, the maroon truck was located in front

---

[1] RCW 5.45.020.

[2] A device that deflates tires in a safe manner.

of a residence with a motorhome in the driveway area. Police found Gustaitis and a male suspect in the motorhome. Police read Gustaitis *Miranda*[3] rights at the jail, which she acknowledged.

The State charged Gustaitis with possession of a stolen motor vehicle (i.e., the maroon truck), attempting to elude a pursuing police vehicle, and other crimes.[4] Gustaitis waived her right to a CrR 3.5 hearing. The trial court denied Gustaitis's motion to exclude hearsay testimony based on a police database search indicating that the maroon truck was stolen, and the trial court denied giving a limiting instruction regarding the police database testimony. No records custodian or owner of the maroon truck testified. A jury convicted Gustaitis of possession of a stolen vehicle and attempting to elude a pursuing police vehicle.

We hold that (1) the trial court erred in admitting hearsay testimony, (2) the error was not harmless, (3) Gustaitis waived her right to a CrR 3.5 hearing, (4) Gustaitis's counsel was not ineffective for waiving the CrR 3.5 hearing, and (5) cumulative error did not deprive Gustaitis of her right to a fair trial. Accordingly, we reverse the conviction for possession of a stolen vehicle and remand to the trial court to dismiss the possession of a stolen vehicle count but otherwise affirm the conviction for attempting to elude a pursuing police vehicle.

FACTS

On the rainy night of February 21, 2021, Mason County Sheriff's Office Detective Dylan Helser—while in his uniform with a badge, fully-marked patrol vehicle with lights, siren, push bumper, and Mason County Sheriff Office decal—received a report of the theft of a white 2005 Ford F-250. Helser then received an additional report that the stolen white truck was at a local

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[4] The jury acquitted Gustaitis of the other two charges.

gas station and accompanied by a maroon Ford F-350. Later, Squaxin Island Police Officer Blaylock observed the trucks pull into a second local gas station. Blaylock—while in his marked police vehicle with lights, siren, push bumper, and Squaxin Island Police Department decal—attempted to initiate a stop of the trucks, but terminated his pursuit due to road conditions and the trucks fleeing at excessive speed with no headlights activated.

Helser later saw the trucks traveling at a high rate of speed and attempted to initiate a stop in the heavy rain. Helser turned on his overhead lights and siren. Helser paced the trucks traveling at 85 mph in a 65-mph zone. The trucks turned onto a very narrow road with just a yellow centerline. The trucks utilized the entire roadway to negotiate turns at times, forced an oncoming car out of the way, and "bl[e]w through" a stop sign. Rep. of Proc. (RP) at 133-34.

An off-duty deputy deployed stop sticks, but the trucks continued at a high rate of speed after running over the stop sticks. This caused the white truck to run into a ditch, while the maroon truck pulled beside it in the middle of the road. Helser used his patrol vehicle to pin[5] the rear tire of the maroon truck and another deputy used their vehicle to pinned the rear of the maroon truck to prevent it from leaving. Helser exited and proceeded to the driver's side of the maroon truck and gave verbal commands for the driver to exit.

Helser did not see the face of the maroon truck driver straight on, but he observed the driver's left shoulder. He observed what appeared to be a dark or black hood over the head, long brown hair draped over the shoulder, and a multi-colored sweatshirt in the area of the shoulder and sleeve. Helser also observed that the driver appeared to be short because the driver was

---

[5] This is a technique where the police vehicle positions itself in a specific way against the target vehicle to keep that vehicle in place.

sitting close to the steering wheel so as to reach the pedals. Based on these observations, Helser concluded that the driver appeared to be a female. The maroon truck was able to break free of the pin and other police officers in marked cars pursued the maroon truck.

Later, Helser heard that the maroon truck struck two patrol vehicles and was returning in his direction. Helser investigated fresh tire tracks leading into the driveway of a residence. Helser found the maroon truck with no occupants parked in front of the residence. Officers contacted the residence's occupants.

Helser then noticed the windows of the motorhome parked on the property were fogged up. Helser gave verbal commands to the occupants of the motorhome and did not receive any response. The homeowners consented to a search of the motorhome and gave Helser a key to the motorhome. Police gave further verbal instructions to the motorhome occupants. Gustaitis and a male suspect exited the motorhome. Helser observed three wet jackets laying on a table in the motorhome. A multi-colored sweatshirt matched the sweatshirt Helser saw on the driver of the maroon truck.

The maroon truck did not have license plates affixed to its front or rear. Police searched the vehicle identification number (VIN) of the maroon truck in a police database that registers data from three systems—the Washington State Department of Licensing, Washington Crime Information Center, and National Crime Information Center. The search returned that the maroon truck was reported as stolen. Helser also observed that the driver door of the maroon truck had a "punched lock." RP at 181-82. Helser testified that this would typically suggest that the vehicle was stolen.

Later, Helser contacted Gustaitis in the jail and read *Miranda* rights to her. Gustaitis stated she understood her rights. At one point, Helser recounted the entire incident and commented on the dangers of the car chase. Gustaitis began to cry, lowered her head, did not look at Helser, and stated, "I know." RP at 184-85. Gustaitis then "perked up and wiped the tears from her face and stated that she hadn't been in the vehicle at all." RP at 185-86.

Prior to trial, Gustaitis twice stipulated to the admission of her custodial statements and waived her right to a CrR 3.5 hearing in signed forms that stated:

> [x] **Custodial Statements by Defendant.**
> > [x] Defendant's statements may be admitted into evidence without hearing by stipulation of the parties. Subject to relevance, foundation, etc."

Clerk's Papers (CP) at 141-42, 145-46.

In Gustaitis's motion in limine, she addressed her custodial statements made to Helser of "I know" and her exculpatory statement denying being in the maroon truck. RP at 7-8. Gustaitis argued, and the State agreed, that Gustaitis's entire statement to Helser should be admitted if her "I know" statement was elicited. The court accepted the parties' agreement regarding the scope of Gustaitis's admissible custodial statements made to Helser. At jury trial, Helser testified to Gustaitis's statements and Gustaitis did not object to Helser's testimony.

Additionally, in her motion in limine, Gustaitis moved to exclude police testimony—that any vehicles involved in the case were stolen—from evidence on the basis of hearsay. The court ruled it admissible under the business records exception to the hearsay rule. Gustaitis requested an instruction limiting the evidence that the vehicles had been reported stolen to explain the police's actions in pursuing the vehicles and not for it to be considered as proof that any vehicle was actually stolen. The trial court declined to give the limiting instruction.

At jury trial, Gustaitis raised a hearsay objection when Helser testified that he received a stolen vehicle sighting report and that a maroon Ford truck accompanied the stolen white truck. The State argued that the testimony was not being offered for the truth of the matter asserted but instead offered to explain the officers' response. The court overruled Gustaitis's objection.

The trial court also overruled Gustaitis's second hearsay objection to Helser's testimony that when someone reports stolen vehicles, it is registered in multiple police databases and that a police database check of the maroon truck returned a status of stolen. Later, outside the presence of the jury, Gustaitis renewed her hearsay objection to Helser's testimony, arguing that any evidence suggesting the maroon truck was stolen would be hearsay, which again was overruled. Neither the owner of the maroon truck nor a records custodian for the police's stolen vehicle database testified.

Following trial, the jury returned guilty verdicts for possession of a stolen vehicle and attempting to elude a pursuing police vehicle.

Gustaitis appeals.

## ANALYSIS

### I. ADMISSIBILITY OF HEARSAY EVIDENCE

Gustaitis argues the trial court erred in admitting hearsay testimony contained in the police stolen car database that identified the maroon truck as being stolen. Gustaitis further argues this evidentiary error was not harmless and thus, materially affected the outcome of trial and requires reversal of her conviction. We agree the trial court erred in admitting hearsay testimony from the stolen vehicle database to the extent that the evidentiary error requires reversal of Gustaitis's conviction for possession of a stolen vehicle.

A.      *Standard of Review*

Generally, a decision to admit or exclude evidence is reviewed for abuse of discretion. *State v. Griffin*, 173 Wn.2d 467, 473, 268 P.3d 924 (2012). There is an abuse of discretion when the trial court adopts a view that a reasonable person would not take, its decision is based on facts unsupported in the record, or its decision was reached by applying an incorrect legal standard. *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

If a trial court abuses its discretion, we then review the error for prejudice to determine whether it was reasonably probable, absent the error, that the outcome of the trial would have been materially affected. *State v. Barry*, 183 Wn.2d 297, 303, 352 P.3d 161 (2015).

B.      *Deputy Helser's Testimony Does Not Fall Within the Business Records Exception to Hearsay*

1. *RCW 5.45.020 – Business Records as Evidence*

"Hearsay" is an out-of-court statement offered into evidence to prove the truth of the matter asserted. ER 801(c). Hearsay is inadmissible unless it falls under an exception. ER 802. One such exception is records of regularly conducted activity. ER 803(a)(6). To be admissible under the business records exception, a business record must (1) be in record form, (2) be of an act, condition or event, (3) be made in the regular course of business, (4) be made at or near the time of the act, condition or event, and (5) the court must be satisfied that the sources of information, method, and time of preparation justify the admittance of the evidence. *State v. Ziegler*, 114 Wn.2d 533, 538, 789 P.2d 79 (1990) (citing RCW 5.45.020). Business records are presumptively reliable if made in the regular course of business and without any apparent motive to falsify. *Id.*

In order to lay a foundation for admission, appropriate testimony by a custodian or other qualified witness is required to establish the record's identity and mode of preparation. *State v. Fricks*, 91 Wn.2d 391, 397, 588 P.2d 1328 (1979) (police database record must be shown to be admissible under the Uniform Business Records as Evidence Act, RCW 5.45). The statutory terms "custodian" and "other qualified witness" are broadly interpreted by reviewing courts. *State v. Quincy*, 122 Wn. App. 395, 399, 95 P.3d 353 (2004). The record, however, does not need to be identified by the very person who made it. *Id.* The testimony of one who, as a regular part of his work, has custody of the record or supervises its creation will suffice. *Id.*

When discussing the application of the business records exception to Helser's testimony during motions in limine, the trial court stated

> Business records rule . . . the records of law enforcement, indicating when somebody said this vehicle is reported stolen, that is something that's kept in the normal course of business of law enforcement. It's admissible.

RP at 21-22.

Here, the State failed to establish the foundational requirements to admit Helser's testimony under the business records exception. Helser is not a records custodian or other qualified witness. No testimony was presented that Helser made the report in the police stolen vehicle database nor supervised the creation of the report. He accessed the database information as part of his work, but he did not have custody of the record. Even if we were to assume Helser is a qualified witness, he did not testify to the report's identity, mode of preparation, whether it was made in the regular course of business, at or near the time of the maroon truck being stolen, nor when stolen vehicle information is updated or removed from the databases.

Furthermore, the database appears to store data from multiple databases, which presents additional hearsay issues. Helser's testimony alone does not reliably establish that the maroon truck was stolen when Gustaitis possessed it. In this instance, without the testimony of the maroon truck owner, a records custodian, or other qualified witness, we hold the admission of Helser's testimony on the status of the maroon truck based on the database constituted impermissible hearsay, that the trial court's ruling rests on untenable grounds, and therefore the trial court abused its discretion in admitting Helser's testimony under the business record exception.

C. *Trial Court's Error in Admitting Deputy Helser's Testimony Was Not Harmless*

To prove possession of a stolen vehicle, the State was required to prove beyond a reasonable doubt that Gustaitis "knowingly received, retained, possessed, concealed, or disposed of a stolen motor vehicle." CP at 96. The trial court instructed the jury that "stolen" meant "obtained by theft, robbery or extortion." CP at 100. The remaining evidence that pointed to the maroon truck being stolen was the truck had a punched door lock, it was being driven at high rates of speed, the driver failed to stop the truck despite multiple police-initiated stops, and it was being driven in tandem with a reported stolen white truck. But, Helser's hearsay testimony about the status of the maroon truck was the only evidence that the maroon truck was actually stolen at the time.

Here, without the truck owner or a properly laid foundation to admit the contested evidence under the business records exception, the jury was permitted to rely on inadmissible hearsay evidence as proof of the maroon truck being stolen. Considering the remaining evidence for Gustaitis's possession of a stolen vehicle count, it is reasonably probable, absent the

admission of the impermissible hearsay, that the outcome of the trial on this count would have differed if the hearsay statements by Helser had been excluded. We hold that the erroneous admission of Helser's statements was not harmless and was prejudicial to Gustaitis on her possession of a stolen vehicle count.[6]

## II. CUSTODIAL STATEMENT – CrR 3.5 HEARING

Gustaitis argues the trial court erred by failing to conduct a CrR 3.5 statement hearing before her custodial statement, "I know," could be admitted. Br. of Appellant at 32-33. She argues her statement was not voluntary due to her extremely emotional state during Helser's accusatory questioning in the jail. We disagree because Gustaitis expressly waived her right to a CrR 3.5 hearing.

The purpose of a CrR 3.5 hearing, Washington's confession procedure, is to determine the voluntariness of custodial statements. *State v. Cherry*, 191 Wn. App. 456, 469, 362 P.3d 313 (2015). The rule is mandatory, but a defendant may waive their right to a CrR 3.5 hearing. *State v. Myers*, 86 Wn.2d 419, 425-26, 545 P.2d 538 (1976). "[A]n attorney is impliedly authorized to stipulate to and to waive procedural matters, such as those obviating the need for certain proof." *State v. Fanger*, 34 Wn. App. 635, 637, 663 P.2d 120 (1983). When counsel waives the CrR 3.5 hearing, counsel may not assail the trial court's failure to conduct one. *State v. Ralph*, 41 Wn. App. 770, 776, 706 P.2d 641 (1985). Moreover, failure to hold a CrR 3.5 hearing does not render a statement inadmissible if the record shows the statement was voluntary, and the

---

[6] Because we reverse the conviction for possession of a stolen vehicle, we do not address Gustaitis's remaining argument that the trial court erred in declining to give a limiting instruction regarding the police database information.

defendant was advised of his or her constitutional rights. *State v. Williams*, 137 Wn.2d 746, 754, 975 P.2d 963 (1999).

Here, Gustaitis twice waived her right to a pretrial confession hearing. Gustaitis's counsel signed two documents expressly waiving the CrR 3.5 hearing and filed the documents with the court. Like in *Ralph*, when counsel waives the CrR 3.5 hearing, Gustaitis may not now attack the trial court's failure to conduct one. 41 Wn. App. at 776. Therefore, we hold the trial court did not err as Gustaitis waived her right to a CrR 3.5 hearing.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Gustaitis argues her counsel's failure to move to suppress her "I know" statement in a CrR 3.5 hearing constituted ineffective assistance of counsel because it prejudiced her and denied her a fair trial. She argues it is possible she involuntarily made her statement because of her extremely emotional state. We disagree.

"To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Legitimate trial strategies or tactics do not constitute deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

The failure to demonstrate either prong of this test ends the court's inquiry. *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020), *aff'd*, 197 Wn.2d 740 (2021). Courts

strongly presume that the counsel was effective. *McFarland*, 127 Wn.2d at 335. The burden is on the defendant claiming ineffective assistance of counsel to show deficient representation based on the record. *Id.*

Here, in Gustaitis's motion in limine, defense counsel successfully argued that if Gustaitis's statement, "I know," were to come into evidence, then the rest of her statement in which she made an exculpatory claim that she had not been in the maroon truck at all, should also be admitted. Defense counsel clearly leveraged the introduction of this ambiguous "admission" in order to have admitted Gustaitis's unequivocal exculpatory statement she made immediately afterwards. In fact, defense counsel emphasized Gustaitis's statement twice at closing and stated, "[Gustaitis] asserted she was not in the truck . . ." and "[Gustaitis] said very clearly I was not in the truck." RP at 315. Given that Gustaitis did not testify at trial, admission of her exculpatory claim that she was not in the maroon truck was certainly a legitimate trial tactic that helped her defense. *See Grier*, 171 Wn.2d at 33. Additionally, Gustaitis *twice* stipulated to the admission of her custodial statements and waived her right to a CrR 3.5 hearing in signed documents filed with the court, which further support that her defense counsel employed legitimate trial strategies or tactics. Therefore, Gustaitis fails to demonstrate the first prong of the applicable test.

Even if we presume that defense counsel's representation is deficient, Gustaitis cannot show the second prong of the test—that the result of her proceeding would have been different absent the suppression of her statement. Had the jury not heard her "I know" statement, there was still overwhelming evidence for the jury to convict Gustaitis of the attempting to elude a pursuing police vehicle charge. Gustaitis was identified as the driver of the maroon truck, she

12

drove at excessive speeds, without headlights, in heavy rain at times, while failing to yield to several marked, pursuing police vehicles with lights and sirens activated. Thus, Gustaitis cannot show prejudice. We hold that Gustaitis's counsel was not ineffective for not requesting a CrR 3.5 hearing.

## IV. CUMULATIVE ERROR DOCTRINE

Gustaitis argues the cumulative effect of the errors she asserts above was to undermine her right to a fair trial, requiring reversal of her convictions and a new trial. We disagree.

The cumulative error doctrine applies when a combination of trial errors denies the defendant a fair trial, even if any individual error may not justify reversal. *State v. Restvedt*, 26 Wn. App. 2d 102, 127, 527 P.3d 171 (2023). Where the errors are few and have little to no effect on the outcome of the trial, the doctrine does not apply. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). The only error raised here is the admission of hearsay evidence regarding the status of the stolen maroon truck, which speaks to Gustaitis's conviction for possession of a stolen vehicle. Gustaitis's other arguments raised did not constitute error. We hold that Gustaitis's claims of error do not rise to the level of cumulative error requiring reversal of her conviction for attempting to elude a pursuing police vehicle.

No. 57153-6-II

CONCLUSION

We reverse Gustaitis's conviction for possession of a stolen vehicle but otherwise affirm Gustaitis's conviction for attempting to elude a pursing police vehicle. We remand to the trial court to dismiss Gustaitis's count for possession of a stolen vehicle.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Veljacic, A.C.J.

Price, J.

14