# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53014-7-II |
| Respondent, | |
| v. | |
| TOMMIE BERNARD TUCKER, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Tommie Tucker appeals his sentence for unlawful possession of a stolen vehicle. Tucker argues that the trial court impermissibly denied his request for a prison-based Drug Offender Sentencing Alternative (DOSA), RCW 9.94A.660, on the basis of his age. Tucker also argues that the trial court erred by imposing collection costs and interest on nonrestitution legal financial obligations. Tucker raises other arguments for reversal in a statement of additional grounds (SAG).

We hold that the trial court did not err by denying Tucker's DOSA request. The DOSA denial was proper because Tucker had unsuccessfully participated in several substance abuse treatment programs in the past, and the trial court determined that he did not show accountability for his substance abuse issues. We affirm Tucker's conviction and the trial court's denial of DOSA, but remand to the trial court to strike collection costs and nonrestitution interest from Tucker's judgment and sentence. None of the arguments in Tucker's SAG merits reversal of his conviction.

FACTS

A Tacoma police officer found Tucker sleeping in a stolen car. Tucker was convicted at a bench trial of unlawful possession of a stolen vehicle. Tucker requested a prison-based DOSA.

Although Tucker was eligible for a DOSA, the State opposed his request, arguing that Tucker had been ordered to treatment four times already, that he failed to take responsibility for his actions or substance abuse issues, and that his possession of a stolen vehicle was not related to his substance abuse issues.

Tucker acknowledged that he had struggled with substance abuse for years, and he had been unsuccessful in some treatment programs. But he argued that he had never been given the opportunity to participate in a DOSA or another long-term program. Tucker argued that his numerous past drug convictions showed how much he needed the DOSA. Counsel also emphasized that, at nearly 50 years old, receiving a DOSA was crucial for Tucker because "[a]s we get older, we become more vulnerable." 4 Verbatim Report of Proceedings (VRP) (Dec. 21, 2018) at 113.

The trial court denied Tucker's request and sentenced him to 43 months in prison, the low end of the standard range.

Tucker then asked to address the court again. Tucker again acknowledged that he had completed treatment classes and received at least one certificate from a treatment program, but continued to struggle with addiction.

The judge then asked Tucker, "How old are you?" *Id.* at 116. Tucker said he was almost 50 years old. Tucker again expressed frustration and disappointment at the decision to deny the DOSA, and the judge responded:

> Mr. Tucker . . . you're 50-some years old, and it's your life, and any time you want to stop using, you can stop using. And at least for the next 24 months, you won't be using, unless somebody got it inside . . . And that's up to you. But at some point, Mr. Tucker, you know what, you can take this off of me right now and you assume responsibility for your life . . . at 50 years old . . . you're not some spring chicken.

*Id.* at 116-17.

At sentencing, the trial court also found Tucker indigent and waived discretionary legal financial obligations. Tucker's judgment and sentence contained boilerplate language requiring him to pay the cost of collecting unpaid legal financial obligations and imposing interest on these obligations.

Tucker appeals, arguing that the trial court impermissibly denied the DOSA based on his age. He also appeals the judgment and sentence provisions imposing collection costs and interest on nonrestitution legal financial obligations. Tucker raised additional arguments for reversal in a SAG.

ANALYSIS

I.  DOSA

A.      General Background on DOSAs

Under RCW 9.94A.505(2)(a)(i), a trial court is ordinarily expected to impose a standard range sentence, but under certain circumstances, "the court may deviate from the standard range." *State v. Yancey*, 193 Wn.2d 26, 30, 434 P.3d 518 (2019). A DOSA is one alternative to standard range sentencing that "give[s] eligible nonviolent drug offenders a reduced sentence, treatment, and increased supervision in an attempt to help them recover from their addictions." *State v. Grayson*, 154 Wn.2d 333, 337, 111 P.3d 1183 (2005); *see* RCW 9.94A.660. Under RCW 9.94A.660(3), a DOSA may be prison-based or residential. In a prison-based DOSA, defendant

receives a sentence "equal to the midpoint of the standard sentencing range, with half the period spent in incarceration and the other half spent in a substance abuse treatment program and community custody." *State v. Williams*, 149 Wn.2d 143, 145, 65 P.3d 1214 (2003).

Defendants are not entitled to receive DOSAs, but they may "ask the trial court to consider such a sentence and to have the alternative actually considered." *Grayson*, 154 Wn.2d at 342. If a person is eligible for a DOSA, the trial court decides if the DOSA is appropriate. *State v. Hender*, 180 Wn. App. 895, 900, 324 P.3d 780 (2014). If a judge denies a DOSA and imposes a standard range sentence, that decision is usually unreviewable. *State v. Bramme*, 115 Wn. App. 844, 850, 64 P.3d 60 (2003). But a defendant may appeal a DOSA denial "if the trial court refused to exercise discretion at all or relied on an impermissible basis in making the decision." *State v. Lemke*, 7 Wn. App. 2d 23, 27, 434 P.3d 551 (2018).

B.     Trial Court's Denial of Tucker's DOSA Request

Tucker argues that the trial court unconstitutionally denied his request for a DOSA because of his age. Tucker contends that even if a permissible, independent basis existed for denying the DOSA, the trial court erred by relying at least in part on age, an impermissible basis. We disagree.

In deciding whether to grant a DOSA, the trial court may properly consider the defendant's criminal history, whether the defendant would benefit from substance abuse treatment, and whether the DOSA would serve both the defendant and the community. *State v. Jones*, 171 Wn. App. 52, 55-56, 286 P.3d 83 (2012). A trial court may "consider the type or circumstances of the crime" at issue. *State v. Van Noy*, 3 Wn. App. 2d 494, 499, 416 P.3d 751 (2018). A defendant's refusal to take responsibility for their actions or substance abuse may also support denying a

DOSA. *Hender*, 180 Wn. App. at 897, 902. Likewise, a defendant's prior failure to complete drug court may justify denying a DOSA. *State v. Smith*, 118 Wn. App. 288, 293, 75 P.3d 986 (2003).

Washington courts have reversed DOSA denials where the trial court categorically refused to exercise discretion or relied on impermissible factors. In *Grayson*, a trial court erred by categorically refusing to consider a DOSA request when it stated there was no funding for the program. 154 Wn.2d at 337, 342. Even when the prosecutor asked if any other reason supported its denial, the trial court offered no other reason. *Id.* at 337. In *Lemke*, a trial court's DOSA denial relied impermissibly on personal animus when the trial court called the defendant "an addict . . . a liar and thief" and denied the DOSA because he was "'just a criminal.'" 7 Wn. App. 2d at 26-27.

In contrast, a DOSA denial was proper where the trial court determined that the defendant "refus[ed] to be responsible for his conduct," because "a user [who] does not take responsibility for his behavior . . . is not likely to be receptive to chang[ing] . . . the behavior." *Hender*, 180 Wn. App. at 902. And in *Smith,* the court explained it was appropriate to consider whether a DOSA candidate "successfully complete[d] drug court," because this would help predict "whether that candidate and the community likely will benefit from a DOSA." 118 Wn. App. at 293.

Here, the State emphasized the fact that Tucker had been ordered to participate in substance abuse treatment programs at least three times before. The trial court denied Tucker's DOSA request because it determined that Tucker had past opportunities for treatment that he did not successfully complete and he did not appear ready to take responsibility for his substance abuse issues. The trial court did not mention Tucker's age until after issuing the DOSA ruling.

Unlike in *Grayson*, the trial court here did not categorically refuse to consider Tucker's DOSA request. 154 Wn.2d at 342. This case also does not resemble *Lemke*, in which the judge

denied the defendant's DOSA request based on clear personal animus toward the defendant. 7 Wn. App. 2d at 26-27. Here, the trial court mentioned Tucker's age only after making its DOSA ruling and in the context of a broader discussion about Tucker's failure to take responsibility for his substance abuse issues over the course of many years. Much like the trial court in *Smith*, the trial court in this case properly considered the fact that Tucker had unsuccessfully participated in treatment programs at least three times before and still needed to "assume responsibility for [his] life." 4 VRP (Dec. 21, 2018) at 17; 118 Wn. App. at 293.

We hold that the trial court did not err by denying Tucker's DOSA request.

## II. LEGAL FINANCIAL OBLIGATIONS

### A. Collection Costs

Tucker argues that the trial court erred by imposing collection costs because he was indigent and the "costs of collection are discretionary and therefore prohibited by RCW 10.01.160(3), as well as the clear holding of *Ramirez*." Br. of Appellant at 15; *see also State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). We strike these collection costs instead because they are inconsistent with the trial court's ruling that it did not intend to impose nonmandatory financial obligations.

The authority to impose collection fees in the judgment and sentence is a matter of superior court discretion under RCW 36.18.190. That statute states, "The superior court *may*, at sentencing or at any time within ten years, assess as court costs the moneys paid . . . to collection agencies or for collection services." RCW 36.18.190 (emphasis added). The parties do not dispute that collection costs are discretionary.

Here, the trial court explicitly stated, "I'm going to waive all the legal/financial obligations, [and] find that you're indigent since you've been incarcerated, other than the [mandatory] crime victim penalty assessment, and find that you've given a DNA sample before." 4 VRP (Dec. 21, 2018) at 114. Following a fill-in-the-blank section of the judgment and sentence stating, "The following extraordinary circumstances exist that make payment of nonmandatory legal financial obligations inappropriate," the trial court noted by hand, "Defendant Indigent." Clerk's Papers (CP) at 26. Thus, the trial court explicitly concluded that Tucker's indigency led it to waive discretionary financial obligations. Perhaps inadvertently, the trial court failed to strike later boilerplate language in the judgment and sentence imposing discretionary collection costs.

Given the trial court's express statements orally and in writing in the judgment and sentence that it did not intend to impose any nonmandatory financial obligations, we strike the boilerplate language imposing nonmandatory collection costs.

B.      Nonrestitution Interest

Tucker argues that his judgment and sentence improperly included a boilerplate provision making him responsible for interest on *all* legal financial obligations, without any exemption. We agree and strike this provision because RCW 10.82.090(1) prohibits interest on nonrestitution legal financial obligations.

Under RCW 10.82.090(1), financial obligations other than restitution do not accrue any interest. But Tucker's judgment and sentence reads: "The financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments. RCW l0.82.090." CP at 28. The judgment and sentence thus did not

comply with RCW 10.82.090(1). We strike the boilerplate provision imposing nonrestitution interest.

### III. STATEMENT OF ADDITIONAL GROUNDS

Tucker's SAG raises a number of additional claims that he argues require reversal of his conviction. None of these claims merits reversal.

A.      Matters Outside the Record

Tucker first argues that his attorney was constitutionally ineffective because he failed to appear for half of his court dates. Under *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995), "[i]f a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." There is no evidence in this record suggesting that Tucker's counsel failed to appear for any of his court dates. Therefore, we do not further consider this argument.

Tucker also argues that his attorney was constitutionally ineffective because he "had stand-ins come bring documents for continuances with his signature that [Tucker] never signed in court," which Tucker argues was "fraudulent." SAG at 1. There is nothing in this record showing who signed any continuance documents, let alone that Tucker was asked to sign any document in a fraudulent manner. Again, we do not further consider this argument.

B.      Claims We Do Not Consider Under RAP 10.10(c)

Tucker argues that his attorney was constitutionally ineffective because he did not show Tucker his discovery until the day of trial. Under RAP 10.10(c), an appellant who files a SAG must "inform the court of the nature and occurrence of alleged errors."

Tucker never explains how this alleged error impacted his trial. Tucker has not informed the court of the nature and occurrence of any error with regard to discovery, and we do not further consider this argument.

Tucker also argues that the court erred by denying his request to admit "evidence [he] wanted to use for [his] defense, and [that his] counsel didn't fight the argument." SAG at 2. But Tucker does not specify what evidence he should have been permitted to present in his defense, nor does he explain how he was harmed by the inability to do so. Because Tucker has not informed the court of the nature and occurrence of this alleged error, we do not further consider this argument.

C.     Other Arguments

        1.     Ineffective assistance of counsel

Tucker's remaining ineffective assistance of counsel claims do not merit reversal because he has not shown that his trial counsel's performance was deficient.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail, Tucker must show both that his counsel's performance was deficient, and that counsel's performance prejudiced him. *Grier*, 171 Wn.2d at 32-33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

We presume reasonableness and apply "exceptional deference" when "evaluating counsel's strategic decisions," and "[i]f trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim [of] ineffective assistance." *State v.*

*McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). A petitioner must prove that "counsel's performance fell below an objective standard of reasonableness in light of all the circumstances." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). To prove prejudice, a petitioner must show that, but for counsel's deficient performance, "there is a reasonable probability that the result of the proceeding would have been different." *Id*.

Tucker argues that his attorney was ineffective because he did not file two motions that Tucker had written himself. Tucker sent the motions to the court, and they were filed but not granted. The trial court explained to Tucker that his attorney was reasonable in not filing them for Tucker because the motions had no reasonable basis in the law, and it was improper for an attorney to file frivolous motions. "Counsel's performance is not deficient for failing to file frivolous motions." *State v. Kirwin*, 137 Wn. App. 387, 394, 153 P.3d 883 (2007). Tucker's attorney properly decided not to file Tucker's motions, and this ineffective assistance of counsel claim fails.

Tucker argues that his attorney was ineffective because he "never objected to anything [the] prosecutor said." SAG at 1. Tucker's attorney objected at least once. And with regard to objections he did not make, the decision whether or not to object is a "classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Tucker has not shown that his attorney's failure to object was deficient, and this claim also fails.

2.      <u>Trial court's failure to consider lesser included offense</u>

Tucker argues that the trial court erred by declining to consider the lesser included offense of possession of stolen property. Possession of stolen property in both the first and second degree (RCW 9A.56.150 and RCW 9A.56.160) is inapplicable to stolen vehicles. A lesser included offense for possession of stolen property would therefore have been inappropriate. The trial court

also correctly determined that taking a motor vehicle without permission in the second degree was not a lesser included offense of unlawful possession of a motor vehicle.

      3.      <u>Trial court's denial of Tucker's request to represent himself</u>

Tucker argues that the trial court erred by denying his request to represent himself. "Criminal defendants have an explicit right to self-representation under the Washington Constitution and an implicit right under the Sixth Amendment to the United States Constitution." WASH. CONST. art. I, § 22. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). Appellate courts review the denial of a defendant's request to proceed pro se for abuse of discretion. *Madsen*, 168 Wn.2d at 503.

A defendant's request for self-representation must be "voluntary, knowing, and intelligent." *Id.* at 504. "The court should also engage in a colloquy to ensure the defendant understands the risks and consequences of self-representation." *State v. Thompson*, 169 Wn. App. 436, 465, 290 P.3d 996 (2012).

Tucker argues that the trial court improperly denied his request to proceed pro se, but the record suggests that Tucker himself withdrew his request. To the extent the trial court denied Tucker's request to proceed pro se, the trial court properly exercised its discretion because it found on the record that Tucker did not understand the risks of proceeding pro se. *See id*. The trial court did not violate Tucker's right to self-representation.

      4.      <u>Trial court's denial of Tucker's pro se motions</u>

Tucker argues that the trial court erred by failing to consider or grant his pro se motions to dismiss. The trial court did consider Tucker's motions. As explained above, the motions were frivolous. The trial court did not err by denying these motions.

The arguments in Tucker's SAG do not merit reversal.

CONCLUSION

We affirm Tucker's conviction and the trial court's denial of DOSA, but remand to the trial court to strike collection costs and nonrestitution interest from Tucker's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, J.

We concur:

_____
Maxa, P.J.

_____
Cruser, J.