IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  40899-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN JACKSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Stephen Jackson was convicted of five counts of burglary in the second degree and one count of criminal trespassing in the second degree and sentenced to 68 months.  Mr. Jackson appeals, arguing the court abused its discretion in denying his request for a Mental Health Sentencing Alternative (MHSA).  Mr. Jackson raises additional arguments in a statement of additional grounds for review.  Finding no error, we affirm.

BACKGROUND

On July 2, 2023, Mr. Jackson was arrested after he failed to scan merchandise when going through self-checkout at a Walmart store in Clarkston, Washington.  Mr.

Jackson had been permanently trespassed from all Walmart stores four years earlier.  The State charged Mr. Jackson with burglary in the second degree and criminal trespass in the second degree.

Walmart later informed law enforcement officers that it had video recordings of Mr. Jackson either under ringing items or not paying for items on May 7, 2023, June 1, 2023, June 12, 2023, and July 1, 2023.  With this additional evidence, the State amended the information to add four additional counts of burglary in the second degree.

Mr. Jackson later filed a motion to dismiss, arguing there were defects in Walmart's trespass form and his right to procedural due process was violated because Walmart is a public place and could not trespass him without a court order.  Mr. Jackson contended that such defects rendered the notice invalid and incapable of being used to prove the unlawful entry elements of criminal trespass and burglary.  Further, Mr. Jackson asserted he was denied notice and an opportunity to challenge the trespass notice. The court denied the motion.

At a later pretrial hearing, Mr. Jackson asked the court, "Is it possible that we can get a [CrR] 3.5 hearing[?]"  Rep. of Proc. (RP) at 126.  The court instructed Mr. Jackson to discuss the issue with his attorney.  At another pretrial hearing, Mr. Jackson stated, without providing any context, "A 3.6 hearing."  RP at 142.  When the court told Mr. Jackson the hearing was over, Mr. Jackson asked, "So, you're denying me a 3.6 hearing?"  RP at 142.  The court told Mr. Jackson that his attorney had not requested one.

2

The case proceeded to a jury trial. At trial, Jamie Lockie, an asset protection operations coach employed by Walmart, testified that she observed Mr. Jackson fail to ring up all the items in his shopping cart while checking out on July 2, 2023. Ms. Lockie later recovered Mr. Jackson's cart and found that only 24 of the 41 items in the cart had been paid for.

Officer Patrick Stilson testified that he responded to a suspected theft near Walmart and contacted Mr. Jackson. Officer Stilson testified that Mr. Jackson had been permanently trespassed from Walmart stores on April 26, 2019.

Asotin County Sheriff's Deputy James Gibson, a former Walmart loss prevention officer, testified that he trespassed Mr. Jackson from all Walmart stores on April 26, 2019. Deputy Gibson identified Mr. Jackson at trial as the individual that he trespassed. Regarding the trespass notice, Deputy Gibson testified, "The reason for contact with Mr. Jackson was two pronged," one being a prior theft that took place on April 24, 2019. RP at 353. Defense counsel objected, arguing that although the fact that Mr. Jackson had been trespassed would be admissible, "the fact that [Mr. Jackson] was trespassed [for theft]" was "highly prejudicial." RP at 354-55. The court agreed and, on defense counsel's motion, instructed the jury "to disregard the previous testimony about the circumstances surrounding the officer's contact with the defendant." RP at 358. Deputy Gibson testified that he had read the trespass form to Mr. Jackson, explained the "trespass process" to Mr. Jackson, and gave Mr. Jackson the form to sign as a recipient. RP at

3

359. Rather than signing the form, Mr. Jackson wrote "UCC-1-206" and "UCC-1-208" on the signature line. Clerk's Papers (CP) at 34.

Walmart Asset Protection Investigator Tim Neal testified that he searched for more of Mr. Jackson's transactions and, through video recordings, found Mr. Jackson under ringing items on May 7, June 1, June 12, and July 1. Mr. Neal testified he was able to track the transactions through Mr. Jackson's "EBT card." RP at 403.

The jury ultimately found Mr. Jackson guilty of five counts of burglary in the second degree and one count of criminal trespass in the second degree. Mr. Jackson filed a motion for an MHSA prior to sentencing. In his motion, Mr. Jackson requested the court order "a report" to aid it in determining whether to grant the MHSA. CP at 102. Mr. Jackson's motion also addressed the statutory requirements for an MHSA and his willingness to participate in an MHSA.

At the January 3, 2025, sentencing hearing, Mr. Jackson's attorney restated his request for an MHSA and requested "that Mr. Jackson be ordered to take the evaluation." RP at 490. The State objected, arguing "it's clear from the record, and from the defendant's criminal history, and from the history in this case that mental health is not the issue." RP at 491. The State claimed that chemical dependency had been an issue for Mr. Jackson, not mental health issues. The court denied Mr. Jackson's request for an MHSA and sentenced Mr. Jackson to 68 months, the high end of the standard range.

Mr. Jackson appeals to this court.

4

ANALYSIS

Mr. Jackson argues the sentencing court erred in denying his request for an MHSA without considering the statutory factors, in considering nonstatutory factors, and in categorically denying his request. We disagree.

As a preliminary matter, the State unpersuasively argues Mr. Jackson's claimed error is unpreserved because he did not seek an MHSA before the trial court. Mr. Jackson filed a motion and declaration for an MHSA prior to sentencing. Mr. Jackson's attorney then brought the motion to the court's attention at sentencing. After hearing minimal argument, the court ruled, "I'm denying the request for the [MHSA]." RP at 492. Mr. Jackson renewed his request for an MHSA during his allocution. The court denied Mr. Jackson's request for a second time, stating, "I just do not believe that the [MHSA] would be successful in this matter." RP at 510. Because Mr. Jackson raised the issue and the court addressed the merits of his request, this issue is preserved for our review. *See e.g.*, *State v. Burke*, 163 Wn.2d 204, 210-11, 181 P.3d 1 (2008).

Turning to the merits, a trial court must generally impose a sentence within the standard sentencing range. *State v. Osman*, 157 Wn.2d 474, 480, 139 P.3d 334 (2006); RCW 9.94A.505(2)(a)(i). "[T]he court may deviate from the standard range in statutorily specified sentences," such as the MHSA. *State v. Yancey*, 193 Wn.2d 26, 30, 434 P.3d 518 (2019); RCW 9.94A.505(2)(a)(x); RCW 9.94A.695. Sentencing courts are given considerable discretion to determine eligibility for an alternative sentence and whether

5

such a sentence is appropriate. *State v. Hender*, 180 Wn. App. 895, 900-01, 324 P.3d 780 (2014).

Granting an alternative sentence is entirely within the sentencing court's discretion, provided the court does not abuse its discretion by categorically refusing to consider the request or by denying the request on an improper basis. *See State v. Sims*, 171 Wn.2d 436, 445, 256 P.3d 285 (2011). A sentencing court abuses its discretion when it categorically refuses to consider an alternative sentence for an individual or an entire class of offenders. *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). When a defendant meets the eligibility requirements for an alternative, a sentencing judge must "meaningfully consider whether a sentencing alternative [is] appropriate." *Id*. at 343. This includes considering whether "'the offender and the community will benefit'" from the alternative sentence. *State v. Smith*, 118 Wn. App. 288, 292, 75 P.3d 986 (2003) (quoting RCW 9.94A.660(2)).

A defendant must meet four requirements to be eligible for an MHSA:

(a) The defendant is convicted of a felony that is not a serious violent offense or sex offense;

(b) The defendant is diagnosed with a serious mental illness recognized by the diagnostic manual in use by mental health professionals at the time of sentencing;

(c) The defendant and the community would benefit from supervision and treatment, as determined by the judge; and

(d) The defendant is willing to participate in the sentencing alternative.

6

RCW 9.94A.695(1). "If insufficient information is available to determine whether a defendant has a serious mental illness, the court *may* order an examination of the defendant." RCW 9.94A.695(2) (emphasis added). After considering all the available information and deeming a defendant eligible for the alternative, "the court shall consider whether the defendant and the community will benefit from the use of this sentencing alternative." RCW 9.94A.695(4).

Mr. Jackson argues the sentencing court did not meaningfully consider the statutory factors for an MHSA. Specifically, Mr. Jackson contends the court did not explain how the facts it relied on fit into the statutory factors for an MHSA. The State responds that Mr. Jackson failed to establish eligibility for an MHSA and that the court properly considered the criteria for an MHSA.

In denying Mr. Jackson's first request for an MHSA, the court stated:

Well, under the RCW 9.94A.695(1)(b), it indicates the defendant is diagnosed with a serious mental health illness recognized by the diagnostic manual and used by mental health professionals at the time of sentencing, which is today. I do not have that, so we will proceed with sentencing and I'm denying the request for the [MHSA].
. . . .

I want to make my record on one other issue. I'm learning more and more it's important to say it, even though you already said it, that the basis in the defense in this case was that Mr. Jackson had the right to be [at Walmart]. Not like other cases we've had where we had a defendant was claiming his severe anxiety condition was what made him go into Walmart and steal. That's not present in this case, and as noted by the State, the long criminal history of Mr. Jackson includes mostly issues with stealing and drugs.

So, that is another factual basis for why I'm declining the [MHSA].

7

No. 40899-0-III
*State v. Jackson*

RP at 492-93.

During allocution, the following exchange occurred between Mr. Jackson and the

court:

> MR. JACKSON: Also—also that day, I did have—I do have mental health
> issues and I—I had a PTSD attack that day for mental health untreated
> PTSD attack. And I've been—I was diagnosed with mental health in 2020
> in Shelton, Washington when I was in Shelton.  And I was trying to get
> [defense counsel] to get the records from Shelton, Washington. I'm
> diagnosed with PTSD, ADHD, social anxiety, and bipolar mental
> depression.  And I've been—I've been on mental health meds since I've
> been at the jail the whole time with no problems.
> . . . .
>
> THE COURT: All right. I appreciate your statements to the Court. I'll tell
> you that I'm familiar with you and have been for a long time.  I think I
> started practicing in 2006. I'm 45. I just calculated you're 49. And for as
> long as I've been familiar with you, you're always out here, usually in
> trouble for the various—obviously, there's 37 line items here.  It looks like
> 35 are convictions, two parole violations.  And I just got to be thinking that
> you got to be getting tired of this.
>
> MR. JACKSON: Yes.
>
> THE COURT: I also notice in your appearance that I can tell when you're
> using and when you're not.  I saw you at Highland Grocery and you
> approached me to tell me you had a dream about my grandfather.
>
> MR. JACKSON: Yes, ma'am.
>
> THE COURT: And you were skinny and you were being weird, and I
> thought uh oh, he's back on drugs again. I'm sorry if there's—
>
> MR. JACKSON: I wasn't—I wasn't. I just had a hernia surgery, ma'am.
>
> THE COURT: Well, I'm sorry if you have mental health issues, but I think
> that, you know, the lack of medication or the lack of evidence of that for me
> other than your words, I think you can get that help along with drug
> treatment while you're in prison.

8

. . . .

THE COURT: I just don't believe that the [MHSA] would be successful in this matter.

RP at 506, 509-10.

In denying Mr. Jackson's first request for an MHSA, the court found he had failed to show he had been diagnosed with a serious mental illness under RCW 9.94A.695(1)(b). Mr. Jackson later asserted, without providing any documentary support, that he had "PTSD, ADHD, social anxiety, and bipolar mental depression." RP at 506. The court was unpersuaded by "the lack of evidence of that . . . other than [Mr. Jackson's] words." RP at 510. Mr. Jackson's verbal assertion falls short of a formal diagnosis of "a serious mental illness recognized by the diagnostic manual in use by mental health professionals." RCW 9.94A.695(1)(b). The court did not abuse its discretion in finding that Mr. Jackson's self-serving assertion was insufficient to establish compliance with RCW 9.94A.695(1)(b).

The court also found that Mr. Jackson did not demonstrate that he and the community would benefit from an MHSA under RCW 9.94A.695(1)(c). The court noted that Mr. Jackson was 49 years old with 35 criminal convictions, most of which were for "stealing and drugs." RP at 493. Based on the court's familiarity with Mr. Jackson spanning nearly two decades, the court believed Mr. Jackson was likely in need of drug treatment and unlikely to succeed in an MHSA. The court further found the absence of a nexus between Mr. Jackson's crimes and claimed mental illness. *See Colon*, 34 Wn.

9

App. 2d at 358-59.  The court's reasons in finding Mr. Jackson and the community would not benefit from an MHSA was not manifestly unreasonable.

The sentencing court did not categorially deny Mr. Jackson's request for an MHSA.  Although the court impliedly found Mr. Jackson met the requirements of RCW 9.94A.695(1)(a) and (d), under its considerable discretion to determine eligibility requirements and whether such a sentence is appropriate, the court properly articulated its reasons for denying an MHSA based on Mr. Jackson's failure to demonstrate his eligibility under RCW 9.94A.695(1)(b) and (c).

The sentencing court did not abuse its discretion in denying Mr. Jackson's request for an MHSA.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

RAP 10.10 permits a defendant to file a statement of additional grounds for review (SAG) if he believes his appellate counsel has not adequately addressed certain matters. Mr. Jackson filed a SAG raising seven issues.

STATEMENT OF ADDITIONAL GROUNDS NO. 1

Mr. Jackson argues the "[t]rial court should have granted the motion to dismiss due to denial of right to appeal the trespass order and due process procedural rights were violated due to lack of procedures available to challenge the notice of trespass."  SAG at 1 (some capitalization omitted).

RAP 10.3(a)(6) requires a party to an appeal to provide argument in support of the issues presented for review and citations to relevant legal authority. The purpose of RAP 10.3(a) "is to enable the court and opposing counsel efficiently and expeditiously to review the accuracy of the factual statements made in the briefs and efficiently and expeditiously to review the relevant legal authority." *Hurlbert v. Gordon*, 64 Wn. App. 386, 400, 824 P.2d 1238 (1992). Consequently, we will not consider conclusory arguments unsupported by citation to authority. *Joy v. Dep't of Lab. & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012). Moreover, when a party fails to support argument with citation to legal authority, we presume that none exists. *Oregon Mut. Ins. Co. v. Barton*, 109 Wn. App. 405, 418, 36 P.3d 1065 (2001).

Because Mr. Jackson has failed to provide any authority supporting his contention that a private entity, like Walmart, must provide procedural due process and a means of appealing a trespass notice, we decline review of this SAG.

STATEMENT OF ADDITIONAL GROUNDS NO. 2

Mr. Jackson argues, "The trespass order is unlawful, was never issued by a court, is not a court order or judicial order." SAG at 1. We disagree.

A private property owner may restrict the use of their property. *State v. Kutch*, 90 Wn. App. 244, 247, 951 P.2d 1139 (1998). A person's presence may be rendered unlawful by a property owner's revocation of the privilege to be on the property. *Id.* at 249. "The right to exclude others extends even if the property is otherwise open to the

11

No. 40899-0-III
*State v. Jackson*

public." *Id.* at 247. Because a private property owner may restrict others from using their property, we reject Mr. Jackson's argument that the burglary or trespass conviction must be based on a court-issued trespass order.

STATEMENT OF ADDITIONAL GROUNDS NO. 3

Mr. Jackson argues the trial court erred in admitting ER 404(b) evidence. Because the testimony was struck by the court, we disagree.

ER 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We review a trial court's decision to admit evidence under ER 404(b) for an abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 750, 202 P.3d 937 (2009). ER 404(b) is read in conjunction with ER 403. *Id.* at 745. ER 403 allows a court to exclude relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice."

Juries are presumed to follow the instructions of the court including the court's directive to disregard testimony. *State v. Grisby*, 97 Wn.2d 493, 499, 647 P.2d 6 (1982); *State v. Babcock*, 145 Wn. App. 157, 164, 185 P.3d 1213 (2008).

Mr. Jackson claims the trial court violated ER 404(b) by allowing testimony about the conduct that led to the issuance of the trespass notice.

12

Deputy Gibson testified that he trespassed Mr. Jackson from Walmart on April 26, 2019, for a theft that occurred on April 24. Defense counsel objected to the testimony, contending that though the trespass notice was admissible, evidence as to why the notice was issued would be "highly prejudicial." RP at 355. The court agreed and instructed the jury "to disregard the previous testimony about the circumstances surrounding the officer's contact with the defendant." RP at 358. The court further instructed the jury before deliberations, "[I]f I have asked you to disregard any evidence, then you must not discuss that evidence during your deliberations or consider it in reaching your verdict." CP at 46.

We presume the jury followed the court's instructions and did not consider the testimony struck by the court.

STATEMENT OF ADDITIONAL GROUNDS NO. 4

Mr. Jackson argues the unlawful entry element of the criminal trespass charge is negated because the trespass notice was unlawful. Mr. Jackson further contends that the State was required to disprove the statutory public premises defense. Mr. Jackson seems to claim there was insufficient evidence to convict him of criminal trespass in the second degree. We disagree.

Due process requires that the State meet its burden of proof beyond a reasonable doubt for every "essential element of a crime." *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994). Sufficiency of the evidence is a question of law this court reviews de

novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). In a sufficiency of the evidence analysis, the court considers whether, "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id*. The remedy for insufficient evidence is dismissal with prejudice. *State v. Irby*, 187 Wn. App. 183, 204, 347 P.3d 1103 (2015).

To convict Mr. Jackson of trespass in the second degree, the State was required to prove, in part, that he knowingly entered or remained unlawfully in or on the premises of another. RCW 9A.52.080(1). To prove Mr. Jackson entered or remained unlawfully, the State had to establish he was "not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2). It is a defense to criminal trespass in the second degree that "the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises." RCW 9A.52.090(2). The State must disprove the public premises defense beyond a reasonable doubt. *See State v. R.H.*, 86 Wn. App. 807, 811, 939 P.2d 217 (1997); RCW 9A.52.090(2).

Mr. Jackson does not provide any argument as to how the State failed to disprove the public premises defense, apart from his argument that the trespass notice is unlawful.

14

Here, the jury was instructed on the public premises defense. The State presented evidence that Mr. Jackson was issued a trespass notice stating that Walmart was permitted to "prohibit individuals from entering its property who interfere with its business, shoplift, destroy property, or otherwise behave in a manner that is unacceptable." CP at 34. The notice claimed Mr. Jackson had engaged in such conduct and was no longer allowed on property owned by Walmart. The notice was read to Mr. Jackson and, although he did not sign his name on the notice, he wrote something to the effect of "UCC-1-206" and "UCC-1-208" on his signature line before a witness. CP at 34. The State also presented evidence of Mr. Jackson entering Walmart and purloining merchandise.

In viewing the evidence in the light most favorable to the State, any rational trier of fact could have found that the State disproved the public premises defense.

STATEMENT OF ADDITIONAL GROUNDS NO. 5

Mr. Jackson argues his due process rights were violated because of the lack of procedures to challenge the notice of trespass and lack of notice. Mr. Jackson also argues his due process rights were violated because the court failed to conduct a CrR 3.5 or 3.6 hearing. We disagree with each argument.

As explained above, Mr. Jackson has not provided any authority to support his contention that a trespass notice issued by a private actor violated his procedural due process rights. We assume no authority exists.

15

Mr. Jackson claims his due process rights were violated because the trial court failed to conduct a CrR 3.6 hearing.

CrR 3.6(a) states:

Motions to suppress physical, oral or identification evidence, other than motion pursuant to rule 3.5, shall be in writing supported by an affidavit or document setting forth the facts the moving party anticipates will be elicited at a hearing, and a memorandum of authorities in support of the motion.

Here, Mr. Jackson did not file a motion to suppress under CrR 3.6. The only reference to a CrR 3.6 hearing is Mr. Jackson's statement, "[a] 3.6 hearing," made without any context during a pretrial hearing. RP at 142. Because Mr. Jackson never provided a written motion, an affidavit or document setting forth the facts, or a memorandum of authorities, the trial court was not required to hold such a hearing.

Mr. Jackson next argues the court erred in failing to conduct a CrR 3.5 hearing. Under CrR 3.5(a), "When a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible." However, a defendant may waive their right to a CrR 3.5 hearing. *State v. Fanger*, 34 Wn. App. 635, 637, 663 P.2d 120 (1983). Further, attorneys are "impliedly authorized to stipulate to and waive procedural matters," including a CrR 3.5 hearing. *Id.* A defendant may not challenge the court's failure to conduct a CrR 3.5 hearing when defense counsel waives the hearing. *State v. Ralph*, 41 Wn. App. 770, 776, 706 P.2d 641 (1985).

16

Additionally, a defendant impliedly waives their right to a CrR 3.5 hearing by failing to object to the testimony of a law enforcement officer. *Fanger*, 34 Wn. App. at 638.

Here, Mr. Jackson's attorney did not request a CrR 3.5 hearing nor did he object to the officer's testimony implicated under CrR 3.5. On appeal, Mr. Jackson does not provide any argument that the waiver was invalid. Because Mr. Jackson's attorney failed to request a CrR 3.5 hearing and no objection was made at trial to the officer's testimony, Mr. Jackson impliedly waived his right to a CrR 3.5 hearing.

STATEMENT OF ADDITIONAL GROUNDS NO. 6

Mr. Jackson argues the sentencing court miscalculated his offender score. Specifically, Mr. Jackson contends his five burglary convictions encompassed the same criminal conduct and should have been counted as a single point in his offender score. We disagree.

We review a sentencing court's determination of what constitutes the same criminal conduct for abuse of discretion. *State v. Graciano*, 176 Wn.2d 531, 537-38, 295 P.3d 219 (2013).

RCW 9.94A.589(1)(a) provides:

> [W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime.

Crimes are considered the same criminal conduct when they have the same "criminal intent, are committed at the *same time* and place, and involve the same victim." RCW 9.94A.589(1)(a) (emphasis added). A defendant bears the burden of proving the crimes entail the same criminal conduct. *Graciano*, 176 Wn.2d at 539.

Mr. Jackson failed to meet his burden of proving the five convictions constitute the same criminal conduct for the simple reason that the crimes occurred on five separate dates. Therefore, the trial court did not abuse its discretion in its calculation of his offender score.

STATEMENT OF ADDITIONAL GROUNDS NO. 7

Mr. Jackson argues his right to a speedy trial was violated. He cites to one instance of asserting his right to a speedy trial where he informed the court, "It's been a year and 93 days that this case has been going." RP at 133. We reject Mr. Jackson's argument because the continuances he challenges on appeal were sought by his attorney and he failed to comply with CrR 3.3(d)(3).

This court reviews alleged CrR 3.3 violations de novo. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). Under CrR 3.3, a defendant must be brought to trial within either 60 days or 90 days from their arraignment, depending on whether they are detained in jail. CrR 3.3(b)(1)(i), (2)(i). A party who objects to a trial date as set beyond the time limits prescribed by CrR 3.3(b) must move the court within 10 days after notice of trial setting is given to set a trial within the applicable time limits. CrR

18

3.3(d)(3). "A party who fails, for any reason, to make such a motion shall lose the right to object that a trial commenced on such a date is not within the time limits prescribed by this rule." CrR 3.3(d)(3).

Our Supreme Court has held that CrR 3.3 grants defense counsel the authority to make binding decisions to seek trial continuances and that such requests waive the defendant's right to object to the continuance. *State v. Ollivier*, 178 Wn.2d 813, 823-25, 312 P.3d 1 (2013). Mr. Jackson's attorney had the authority to seek the trial continuances he now complains of on appeal. Moreover, Mr. Jackson did not file a motion under CrR 3.3(d)(3) for the court to set a trial date within the time limits for which he now raises an objection. Thus, Mr. Jackson lost the right to object. CrR 3.3(d)(3).

Mr. Jackson's right to a speedy trial was not violated.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____　　　　　　_____
Staab, C.J.　　　　　　　　　　　　　　Lawrence-Berrey, J.

19